UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CANDELARIA AVILA, | No. 2:15-cv-0461 CKD |
| Plaintiff, | |
| v. | ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") finding plaintiff did not continue to be disabled for purposes of receiving Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and/or remand and grant the Commissioner's cross-motion for summary judgment.

BACKGROUND

In a decision dated August 26, 2013, the ALJ determined plaintiff was no longer disabled and that her disability ceased on March 1, 2012.[1] Administrative Transcript ("AT") 20-33. The

---

[1] Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(a).
In this case, plaintiff's disability benefits were terminated pursuant to a continuing

1

ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The most favorable medical decision finding that the claimant was disabled is the determination dated November 12, 2008. This is known as the "comparison point decision" or CPD.
>
> 2. At the time of the CPD, the claimant had the following medically determinable impairments: depression and panic disorders. These impairments were found to meet section(s) 12.04 entitled, *Affective Disorders* of [the regulations].
>
> 3. The medical evidence establishes that, as of March 1, 2012, the claimant had the following medically determinable impairments: depression, panic disorder, anxiety, bipolar disorder, alcohol abuse disorder, rheumatoid arthritis, degenerative disc disease of the lumbar spine, and obesity. These are the claimant's current impairments.
>
> 4. Since March 1, 2012, the claimant has not had an impairment or combination of impairments which meets or medically equals the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5. Medical improvement occurred as of March 1, 2012.
>
> 6. The medical improvement is related to the ability to work because, as of March 1, 2012, the claimant's CPD impairment(s) no longer met or medically equaled the same listing(s) that was met at the time of the CPD.
>
> 7. Beginning on March 1, 2012, the claimant has continued to have a severe impairment or combination of impairments.
>
> 8. Beginning on March 1, 2012, based on the current impairments, the claimant has had the residual functional capacity to perform sedentary work as defined in [the regulations]. The claimant can lift, and/or carry no more than ten pounds frequently or occasionally. She can stand and/or walk at [sic] for four hours in an eight-hour workday. She can sit for six hours in an eight-hour workday. The claimant can occasionally climb ramps and stairs and can never climb ladders, ropes, or scaffolds. She can frequently reach, handle, or finger with the bilateral upper extremities. She can perform simple, unskilled work.
>
> 9. The claimant has no past relevant work.

---

disability review (CDR). This type of review is routinely conducted by the Commissioner to determine whether an individual is still disabled. A seven-step sequential process is used in the CDR. 20 C.F.R. § 416.994.

      10.  On March 1, 2012, the claimant was a younger individual age 18-44.

      11.  The claimant has at least a high school education and is able to communicate in English.

      12.  Transferability of job skills is not an issue because the claimant does not have past relevant work.

      13.  Beginning on March 1, 2012, considering the claimant's age, education, work experience, and residual functional capacity based on the current impairments, the claimant has been able to perform a significant number of jobs in the national economy.

      14.  The claimant's disability ended on March 1, 2012, and the claimant has not become disabled again since that date.

AT 21-33.

ISSUES PRESENTED

Plaintiff contends the ALJ improperly relied on the Medical-Vocational Guidelines (the Grids) to find her not disabled.

LEGAL STANDARDS

When previously granted benefits are terminated by the Commissioner, the burden of proof ordinarily shifts.  Rather than resting on a current recipient of disability benefits to prove that he or she is disabled, the burden rests on the Commissioner to prove that the applicant is no longer disabled.  "Once a claimant has been found to be disabled, . . .a presumption of continuing disability arises in [his] favor[, and the Commissioner] bears the burden of producing evidence sufficient to rebut this presumption of continuing disability."  Bellamy v. Secretary of Health & Human Serv., 755 F. 2d 1380, 1381 (9th Cir. 1985); see also Saltzman v. Apfel, 125 F. Supp. 2d 1014 (C.D. Cal. 2000) (same).  This evidence then is reviewed under the substantial evidence standard.  Saltzman, 125 F. Supp. 2d at 1019 (citing Murray v. Heckler, 722 F.2d 499, 500 (9th Cir. 1983)).

Substantial evidence means more than a mere scintilla of evidence, but less than a preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)).  "It means such evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389,

1    402, 91 S. Ct. 1420 (1971) (quoting <u>Consolidated Edison Co. v. N.L.R.B.</u>, 305 U.S. 197, 229, 59

2    S. Ct. 206 (1938)).  The record as a whole must be considered, <u>Howard v. Heckler</u>, 782 F.2d

3    1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts

4    from the ALJ's conclusion weighed.  <u>See</u> <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985).

5    The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting

6    evidence.  <u>Id</u>.; <u>see</u> <u>also</u> <u>Hammock v. Bowen</u>, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial

7    evidence supports the administrative findings, or if there is conflicting evidence supporting a

8    finding of either disability or nondisability, the finding of the ALJ is conclusive, <u>see</u> <u>Sprague v.</u>

9    <u>Bowen</u>, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal

10   standard was applied in weighing the evidence, <u>see</u> <u>Burkhart v. Bowen</u>, 856 F.2d 1335, 1338 (9th

11   Cir. 1988).

12   <u>ANALYSIS</u>

13        Plaintiff contends that the ALJ improperly relied on the Grids because the assessed

14   residual functional capacity limited plaintiff to frequent reaching, handling, or fingering with the

15   bilateral upper extremities.  Plaintiff asserts that this is a significant limitation, thus requiring the

16   testimony of a vocational expert.

17        The Medical-Vocational Guidelines ("the grids") are in table form.  The tables present

18   various combinations of factors the ALJ must consider in determining whether other work is

19   available.  See generally <u>Desrosiers v. Sec'y of Health and Human Servs.,</u> , 846 F.2d 573, 577-78

20   (9th Cir. 1988).  The factors include residual functional capacity, age, education, and work

21   experience.  For each combination, the grids direct a finding of either "disabled" or "not

22   disabled."

23        There are limits on using the grids, an administrative tool to resolve individual claims that

24   fall into standardized patterns:  "[T]he ALJ may apply [the grids] in lieu of taking the testimony

25   of a vocational expert only when the grids accurately and completely describe the claimant's

26   abilities and limitations."  <u>Jones v. Heckler</u>, 760 F.2d 993, 998 (9th Cir. 1985); <u>see also Heckler</u>

27   <u>v. Campbell</u>, 461 U.S. 458, 462 n.5 (1983).  The ALJ may rely on the grids, however, even when

28   a claimant has combined exertional and nonexertional limitations, if nonexertional limitations are

1   not so significant as to impact the claimant's exertional capabilities.  Bates v. Sullivan, 894 F.2d

2   1059, 1063 (9th Cir. 1990), overruled on other grounds, Bunnell v. Sullivan, 947 F.2d 341 (9th

3   Cir. 1991); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988); see also Odle v. Heckler, 707

4   F.2d 439 (9th Cir. 1983) (requiring significant limitation on exertional capabilities in order to

5   depart from the grids).

6         "The ALJ can use the [G]rids without vocational expert testimony when a non-exertional

7   limitation is alleged because the [G]rids provide for the evaluation of claimants asserting both

8   exertional and non-exertional limitations.  But the [G]rids are inapplicable when a claimant's

9   non-exertional limitations are sufficiently severe so as to significantly limit the range of work

10  permitted by the claimant's exertional limitations."  Hoopai v. Astrue, 499 F.3d 1071, 1075 (9th

11  Cir. 2007) (citations and quotation marks omitted).  In such instances, the testimony of a

12  vocational expert is required.

13        The ALJ found that plaintiff was limited to frequent reaching, handling, or fingering,

14  which limits plaintiff to such manipulations for up to two thirds of an eight-hour workday.  See

15  SSR 83-10.[2]  The Social Security Rulings further note that "[m]ost unskilled sedentary jobs

16  require good use of both hands and the fingers; i.e., bilateral manual dexterity."  SSR 96-9p.  In

17  finding that the sedentary base was not significantly eroded, the ALJ specifically noted that there

18  was no evidence in the record that plaintiff was significantly limited in manual dexterity.  AT 32.

19  The ALJ also correctly noted that by June 2012, plaintiff had full range of motion in her hands,

20  with no joint deformity, heat, swelling, erythema or effusion.  AT 32, 690.  The ALJ also

21  considered the lack of objective findings with respect to plaintiff's fingers and hands in August

22  and October 2012 or February 2013.  AT 32, 670, 673, 674.  In light of the record medical

23  evidence and the ALJ's finding, supported by the record, that plaintiff could perform frequent

24  reaching, handling, or fingering, the court finds no error in the step five analysis.

---

[2] Social Security Rulings "represent precedent final opinions and orders and statements of policy and interpretations that we have adopted." 20 C.F.R. § 402.35(b)(1). Social Security Rulings are "binding on all components of the Social Security Administration." Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); cf. Silveira v. Apfel, 204 F.3d 1257, 1260 (9th Cir.2000) ("This court defer[s] to Social Security Rulings ... unless they are plainly erroneous or inconsistent with the Act or regulations").

CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 12) is denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 13) is granted; and

3. Judgment is entered for the Commissioner.

Dated: February 18, 2016

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

4 avila0461.ss